IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTINA DHANARAJ, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Case No. TJS-20-0970 |
| MARKEL INSURANCE COMPANY, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

Now pending before the Court is Defendant Markel Insurance Company's ("Markel") Motion for Judgment on the Pleadings (ECF No. 45).[1] Having considered the submissions of the parties (ECF Nos. 45, 46 & 47), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, Markel's motion will be granted.

**I.   Background**

Plaintiff Christina Dhanaraj ("Dhanaraj") filed this lawsuit to recover for Markel's purported breach of contract, which arises from Markel's refusal to defend or indemnify Dhanaraj in connection with a lawsuit pending in Maryland state court, and to obtain a declaratory judgment that Markel is required to defend and indemnify Dhanaraj in connection with the underlying state court lawsuit.[2] *See* ECF No. 41.

---

[1]   In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF Nos. 35, 36 & 43.

[2]   The Court previously granted Intervenor-Plaintiffs Jane and John Doe permission to intervene and permission to proceed under pseudonyms. ECF No. 28. The Court will refer to Dhanaraj and Jane and John Doe collectively as the "Plaintiffs."

## II. Discussion

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6). *Butler v. United States*, 702 F.3d 749, 751-52 (4th Cir.2012). Therefore, a motion for judgment on the pleadings "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact. *Butler*, 702 F.3d at 752.

### A. Applicable Law

Because this case was removed on the basis of diversity, the Court applies the substantive law and choice of law rules of the state in which the court sits. *See State Farm Fire & Cas. Co. v. Huguely*, 432 F. Supp. 3d 587, 591 (D. Md. 2020) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). "In contract claims, Maryland applies the doctrine of *lex loci contractus*, meaning the law of the place where the contract was made applies." *Huguely*, 432 F. Supp. 3d at 591 (citing *Allstate Ins. Co. v. Hart*, 327 Md. 526, 529 (1992). "The *locus contractus* is the place where the last act is performed which makes an agreement a binding contract." *Grain Dealers Mut. Ins. Co. v. Van Buskirk*, 241 Md. 58, 65-66 (1965). In an insurance contract, the delivery of the policy and the payment of the premiums constitute these "last acts." *Id.* (citing *Sun Ins. Office, Ltd. v. Mallick*, 160 Md. 71, 81 (1931)). The parties agree that Maryland's substantive law applies to this dispute. *See* ECF Nos. 45-1 at 2 & 46 at 1-2 (applying Maryland law).

**B.     Analysis**

In Maryland, an insurance company has a duty to defend its insured "for all claims that are potentially covered under the policy." *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 16 (2004). In determining whether a duty to defend exists under Maryland law, the Court follows a two-part inquiry. *Id.* at 15. First, the Court considers the extent of the coverage and defenses under the terms and requirements of the insurance policy. Second, the Court asks whether the allegations in the underlying suit potentially bring the claim within the policy's coverage. "The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit." *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 193 (1981). Any doubt about a potentiality of coverage must resolved in favor of the insured. *Id.* at 194.

Under Maryland law, insurance policies are construed using "ordinary principles of contract interpretation." *Megonnell v. United Servs. Auto. Ass'n*, 368 Md. 633, 655 (2002). "Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer." *Id.*; *see also W.M. Schlosser Co. v. Ins. Co. of N. Am.*, 325 Md. 301, 305-06 (1992) ("In the event of an ambiguity . . . . it will be construed against the insurer as the drafter of the instrument."). In general, where a duty to defend is contested, an insurer may not rely on extrinsic evidence to contest coverage, but an insured may rely on extrinsic evidence to prove that the insurer has a duty to defend. *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 110 (1995).

"Maryland recognizes two limited exceptions to the general rule against an insurer's use of extrinsic evidence." *Gemini Ins. Co. v. Earth Treks, Inc.*, 260 F. Supp. 3d 467, 480 (D. Md. 2017) (quoting *Northern Ins. Co. of New York v. Baltimore Bus. Commc'ns, Inc.*, 68 F. App'x 414, 418 (4th Cir. 2003) (unpublished)). "First, when the underlying tort plaintiff has amended his

allegations against the insured, the insurer may utilize the amendments as extrinsic evidence." *Id.* (citing *Baltimore Gas & Elec. Co. v. Com. Union Ins. Co.*, 113 Md. App. 540, 568 (1997)). "If the amended allegations no longer raise a potentiality for coverage, the insurer no longer has a duty to defend." *Id.* Second, "a court is not obligated to 'turn a blind eye where [it is established] that an insured tortfeasor is excluded from coverage under [the] particular terms of the insurance policy.'" *Id.* (quoting *Universal Underwriters Ins. Co. v. Lowe*, 135 Md. App. 122, 151 (2000)). "In other words, an insurer may utilize uncontroverted extrinsic evidence from the underlying lawsuit if such evidence clearly establishes that the suit's allegations are beyond the scope of coverage." *Id.*

The sole question before this Court is whether any claims brought against Dhanaraj in the underlying state court lawsuit are potentially covered by the Markel insurance policy. The Court begins its analysis by reviewing the terms of that policy.

    **1.**     **Policy Terms**

On or about June 25, 2017, Markel issued Policy No. FMP20014404-04 (the "Policy") to Dhanaraj for the operation of an individual-owned in-home childcare business. ECF Nos. 45-1 at 2 & 45-2. The Policy identifies Dhanaraj individually as the insured and makes no reference to any entity named "Christina Dhanaraj Daycare."[3] ECF No. 45-2 at 2-5, 13 & 66.

The Policy's Commercial General Liability Coverage provides coverage for claims arising from "bodily injury" to which the Policy applies. ECF No. 45-2 at 17. An endorsement to the Policy titled "Abuse or Molestation and Employee and Volunteer Worker Defense Coverage" provides that the Commercial General Liability Coverage does not cover claims arising from "[b]odily injury . . . arising out of the actual or threatened abuse, molestation or exploitation by

---

[3] Dhanaraj testified in a deposition that she was not "an employee of the day care," and that there was no entity with a "legal existence" for which she provided daycare services separate from the services that she provided as an individual. ECF No. 45-3 at 9.

4

anyone." *Id.* at 55. The endorsement goes on, however, to provide coverage for claims of "bodily injury arising out of abuse, molestation or exploitation," so long as such abuse "[r]esults from the insured's negligence in employment, investigation, supervision, reporting to the proper authorities or failure to so report, training or retention."[4] *Id.* at 55-56. The endorsement also provides coverage for "employee and volunteer worker defense costs" for an employee or volunteer worker of the insured who is alleged to have committed a covered act of abuse, molestation or exploitation. *Id.* at 56. The endorsement excludes coverage from "[a]ny insured who takes part in the abuse, molestation or exploitation." *Id.* Another endorsement to the Policy modifies an exclusion in the Commercial General Liability Coverage so that "[c]orporal punishment to [the insured's] student administered by or at the direction of any insured" is not excluded from the Policy's general exclusion for claims arising from bodily injury "expected or intended from the standpoint of the insured." *Id.* at 45.

**2. Underlying Lawsuit**

A copy of the First Amended Complaint (the "Complaint") from the underlying state court lawsuit is filed at ECF No. 46-1. The Complaint was filed by Jane and John Doe, individually and as parents and guardians on behalf of the minor child Jane Roe, against Dhanaraj and "Christina Dhanaraj Daycare." ECF No. 46-1 at 1. The Complaint alleges that "Dhanaraj subjected Jane Roe, a two-year old girl at the time of the allegations made herein, to child abuse, assault and battery causing severe emotional distress to Plaintiffs." *Id.* ¶ 2.

Specifically, the Complaint alleges that Dhanaraj provided daycare services to Jane Roe beginning in June 2015, when Jane Roe was about three months old. *Id.* ¶ 13. On January 12, 2018,

---

[4] The endorsement's provision of coverage also depends on the abuse taking place in the "coverage territory," and occurring during the policy period, but neither of these points are in dispute.

Dhanaraj was recorded on video "using the palm of her hand, violently striking then 2-year old Jane Roe about her face and head." *Id.* ¶ 18. The video shows "Jane Roe sitting quietly on the floor of a room" of Dhanaraj's daycare when Dhanaraj "approaches Jane Roe and scolds her verbally." *Id.* ¶¶ 19-20. The video then shows Dhanaraj delivering "approximately eight violent, brutal open-handed slaps to Jane Roe's face, alternating from the right to left side." *Id.* ¶ 21. Jane Roe hyperventilated and cried inconsolably. *Id.* ¶ 22. Dhanaraj then pushed Jane Roe to the floor, grabbed her by the head to pull her up again, and continued to violently strike Jane Roe on her face and head. *Id.* ¶¶ 23-25. At the end of the video, Jane Roe is seen "sitting by herself crying and reeling from the beating." *Id.* ¶ 26.

The Montgomery County Police Department and the Maryland Office of Child Care investigated the incident. *Id.* ¶ 27. Dhanaraj was arrested and admitted during questioning that she had "hurt" Jane Roe. *Id.* ¶¶ 28-29. She explained that she "hurt" Jane Roe because Jane Roe (then only two years old) "would not use the bathroom on the toilet and instead had a bowel movement in her diaper." *Id.* ¶ 30. Dhanaraj went on to explain that she became angry, "really lost it," and struck Jane Roe. *Id.* ¶¶ 31-32. Dhanaraj was subsequently charged with Second Degree Child Abuse, in violation of Md. Code, Crim. Law § 3-601. *Id.* ¶ 35. She pled guilty and was sentenced to 10 years imprisonment, all but 18 months suspended, plus a term of supervised probation. *Id.* ¶ 36.

The Complaint asserts five claims against Dhanaraj: assault, battery, intentional infliction of emotional distress, respondeat superior, and negligence. Counts I through IV characterize Dhanaraj's conduct as "perpetrated with actual malice," "unlawful[] and predator[y]," "extreme and outrageous and beyond all possible bounds of decency in society," "perpetrated on a two-year old defenseless child," and "vicious." ECF No. 46-1 at 6-9. In Count V, the Doe Plaintiffs'

characterization of Dhanaraj's assault of their daughter is muted. In this count, the Doe Plaintiffs parrot language from the Code of Maryland Regulations ("COMAR") about the boundaries of appropriate discipline in a daycare setting. *Id.* at 9-10. The Doe Plaintiffs assert that Dhanaraj was negligent in failing to comply with her duties of care (presumably under COMAR). ECF No. 46-1 at 9-10.

### 3.     There is No Potentiality of Coverage

Considering the extent of coverage and defenses under the terms of the Policy, the Court finds that the allegations in the underlying suit do not potentially bring any claim within the scope of the Policy's coverage.

First, Dhanaraj's assault of Jane Roe is excluded from coverage under the endorsement to the Policy titled "Abuse or Molestation and Employee and Volunteer Worker Defense Coverage." ECF No. 45-2 at 55-56. This endorsement provides that coverage is only available for claims involving bodily injury arising out of actual abuse if such abuse is the result of the insured's negligence in employment, investigation, supervision, reporting, training, or retention. The endorsement specifically excludes from coverage "[a]ny insured who takes part in the abuse." Because the underlying lawsuit alleges that Dhanaraj committed the abuse herself, no coverage is available. Dhanaraj is specifically excluded from coverage because she is identified as the insured under the Policy and is alleged to have committed the abuse that resulted in Jane Roe's bodily injury. In addition, the underlying lawsuit does not allege that Dhanaraj's abuse was the result of her negligence in employment, investigation, supervision, reporting, training, or retention. Dhanaraj is alleged to have abused Jane Roe herself; the abuse did not result from her negligence in employing other childcare providers.

Second, Dhanaraj's assault of Jane Roe is not covered by the Policy's corporal punishment endorsement. ECF No. 45-2 at 46. There is no allegation in the underlying lawsuit that Jane Roe's bodily injury was the result of corporal punishment. The substance of the underlying lawsuit alleges that "Dhanaraj subjected Jane Roe, a two-year old girl . . ., to child abuse, assault and battery." ECF No. 46-1 at 2. The factual allegations of the underlying lawsuit plausibly substantiate this allegation: Dhanaraj struck Jane Roe while the child was seated on the floor, then pushed her over, then grabbed her by the head so that she could strike her some more. The lawsuit alleges why Dhanaraj assaulted Jane Roe: she was mad at her and "really lost it" in her anger. The fact that Dhanaraj pled guilty to second degree child abuse and was sentenced a term of imprisonment is not disputed.

In Count V of the underlying complaint, the Doe Plaintiffs allege that Dhanaraj was negligent in failing to refrain from abusing Jane Roe. This allegation is nothing more than an attempt to recharacterize the facts to manufacture coverage where it does not exist. Even so, this attempt is unsuccessful inasmuch as it incorporates the factual allegations set forth in paragraphs 1-36 of the underlying complaint. These allegations characterize Dhanaraj's assault of Jane Roe as cruel, inhumane, and malicious. Further, even if Dhanaraj's striking, pushing, and grabbing of Jane Roe could be characterized as corporal punishment, such an act would still amount to second degree child abuse given the allegations of the underlying complaint, Dhanaraj's admission of having committed second degree child abuse, and Maryland's prohibition against "reasonable corporal punishment" by any person other than a child's parent or step-parent. *See* Md. Code, Fam. Law § 4-501; *B.H. v. Anne Arundel Cty. Dep't of Soc. Servs.*, 209 Md. App. 206, 229 (2012); *see also* Md. Code Regs. 13A.15.07.01 ("A child in care may not be subjected to abuse, neglect, mental injury, or injurious treatment . . . ."); Md. Code Regs. 13A.15.01.02(B)(20) (defining "injurious

treatment" to include "Physical discipline, including but not limited to spanking, hitting, shaking, or any other means of physical discipline, or enforcement of acts which result in physical pain"); Md. Code Regs. 13A.15.07.04(B) (stating that family child care providers may not "[s]pank, hit, shake, or use any other means of physical discipline").

As other courts have done in similar circumstances, this Court rejects the Plaintiffs' attempt to portray Dhanaraj's intentional assault of Jane Roe as a negligent act or as corporal punishment. *See Markel American Insurance Co. v. Staples*, No. 309CV435HEH, 2010 WL 370304 (E.D. Va. Jan. 28, 2010) ("[A] reviewing court should examine the facts of the underlying complaint and the nature of the claim" rather than relying on "conclusory allegations" to determine coverage); *Nationwide Mut. Fire Ins. Co. v. Overstreet*, 568 F. Supp. 2d 638, 652 (E.D. Va. 2008) ("There is simply nothing in these factual allegations that might plausibly be construed to mean that the injuries to Jane Doe caused by Joel Overstreet were the result of an 'accident' or were not intended. One does not accidentally or negligently sexually molest another."); *Kamaki Skiathos, Inc. v. Essex Ins. Co.*, 396 F. Supp. 2d 624, 628-29 (2005) (looking to the substance of the factual allegations made in underlying lawsuits, rather than the attorneys' characterization of the claims, and determining that the claims did not fall within the bounds of insurance coverage*); Gordon v. Hartford Fire Ins. Co.*, 105 F. App'x 476, 483 (4th Cir. 2004) ("The . . . defendants' alleged willful and malicious acts appear clearly intended, and any negligence appears merely incidental to the intentional misconduct. Therefore, the district court properly found that all of the claims . . . entailed intentional acts outside of the scope of the CGL policy.").

Third, the bodily injuries that Dhanaraj caused to Jane Roe do not qualify as an "occurrence" under the Policy. The Policy provides coverage for bodily injuries only if the injuries are "caused by an 'occurrence' that takes place in the 'coverage territory,'" occur during the policy

9

period, and were not known to the insured prior to the policy period. ECF No. 45-2 at 17. The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 31. "This Court has observed that an "accident" occurs under Maryland law "'if in that act, something unforeseen, unusual and unexpected occurs which produces the event.'" *Gemini*, 260 F. Supp. 3d at 476-77 (quoting *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F. Supp. 2d 641, 650 (D. Md. 2009) and *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298 (2000)). "Additionally, under Maryland law, 'an act of negligence constitutes an 'accident' under a liability insurance policy when the resulting damage was an event that takes place without [the insured's] foresight or expectation,' a subjective rather than objective standard." *Id.* (quoting *USAA Cas. Ins. Co. v. Mummert*, 213 F. Supp. 2d 538, 542 (D. Md. 2002)) (emphasis omitted).

The bodily injuries that Jane Roe suffered were not an accident. They were the intended result of Dhanaraj's intentional conduct. As such, they do not qualify as an "occurrence" under the policy. *See Mummert*, 213 F. Supp. 2d at 542 (holding that where every claim in the underlying lawsuit was "either an allegation of intentional conduct or a mere recharacterization of intentional conduct as negligent," the claims "clearly [fell] outside of the scope of the USAA policy covering 'occurrences,'" where the policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions") (citing *Am. Home Assur. Co. v. Osbourn*, 47 Md. App. 73, 81s (1980) ("In the instant case it cannot seriously be asserted that the trespass and conversion even remotely alleged an accident."); *see also Staples*, 2010 WL 370304, at *5 ("Simply attaching a negligence claim to a suit will not automatically bring an otherwise intentional act within the scope of coverage. . . . Coverage decisions turn on a careful review of all factual allegations, not simply the scrivener's characterizations.").

Fourth, Markel has no duty to defend Dhanaraj in the underlying lawsuit because the Policy states that no duty to defend will exist where the insured "is alleged to have taken part in the abuse." ECF No. 45-2 at 55. Dhanaraj is listed as the insured in the Policy and the underlying lawsuit alleges that she is the person who abused Jane Roe.

Fifth, Markel is not required to defend or indemnify Dhanaraj under the Policy's Employee Defense Coverage. ECF No. 45-2 at 56. This coverage only applies to employees or volunteer workers. Dhanaraj is the listed insured on the Policy, not an employee or volunteer worker. It is undisputed that Dhanaraj testified in the underlying lawsuit that she was not an employee of her home-based daycare. ECF No. 45-3 at 9. In addition, because Dhanaraj has already pled guilty to second degree child abuse, she has been "adjudicated to be a wrongdoer." *See* ECF No. 45-2 at 56 (stating that Markel will only pay employee defense costs until such time as the employee is adjudicated to be a wrongdoer).

Sixth, Markel is not required to provide coverage to the entity "Christina Dhanaraj Daycare" because such an entity does not exist and because it is not listed as the insured under the Policy. ECF Nos. 45-2 at 2-5, 13 & 66 & 45-3 at 9.

**III.    Conclusion**

For the reasons set forth above, there is no potentiality of coverage for the claims asserted against Dhanaraj in the underlying lawsuit under the Policy. Markel is not required to defend or indemnify Dhanaraj in connection with the underlying lawsuit. Markel's Motion for Judgment on the Pleadings is **GRANTED**.

By separate order, judgment will be entered in favor of Markel as to both counts of Dhanaraj's Amended Complaint for Declaratory Judgment (ECF No. 41).


<u>July 21, 2021</u>                                          <u>            /s/                    </u>
Date                                                   Timothy J. Sullivan
                                                       United States Magistrate Judge